FILED IN OPEN COURT
DATE: 12/15/16
BY: [signature]
DEPUTY CLERK
DIVISION, W.D. of V.

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| **v.** | ) |
| | ) Criminal No. 7:16-CR-00040 |
| WESTLEY RICHARDSON | ) |
| | ) |
| | ) |

## UNITED STATES' FACTUAL BASIS FOR GUILTY PLEA

At trial of this matter, the United States would prove beyond a reasonable doubt the following facts using relevant and admissible evidence:

1. On or about February 12, 2016, law enforcement officers supervised a controlled purchase of narcotics from Westley RICHARDSON, a.k.a. "Murda" or "Murder." Equipped with a covert audio/video recording device and $300.00 in recorded currency, a confidential source purchased two wax-fold bundles of heroin from RICHARDSON at a hotel in Roanoke, within the Western District of Virginia. The wax-fold bundles were stamped with the word "Bulletproof" and proven by subsequent laboratory analysis to contain heroin.

2. On or about February 25, 2016, law enforcement officers supervised another controlled purchase of narcotics from RICHARDSON. Equipped with a covert audio/video recording device and $400.00 in recorded currency, a confidential source purchased two wax-fold bundles of heroin and one gram of methylenedioxymethamphetamine ("molly") from RICHARDSON at RICHARDSON's home located at 917 Ferdinand Avenue, in Roanoke. The wax-fold bundles were stamped with the word "Bulletproof" and proven by subsequent laboratory analysis to contain heroin.

3. On or about May 12, 2016, agents encountered RICHARDSON during a traffic stop in Roanoke. During a subsequent search of RICHARDSON's person, agents detected and

seized approximately 10 grams of packaged heroin, stamped with the word "Bulletproof," and approximately 0.5 grams of crystal methamphetamine, also packaged. Laboratory analysis confirmed that the two substances seized from RICHARDSON on or about May 12, 2016 were heroin and methamphetamine, respectively.

4.     RICHARDSON was arrested in connection with the traffic stop and transported to the Roanoke City Jail. During his following, Mirandized interview, RICHARDSON made the following admissions:

a.     that for three months prior to his arrest, he had been purchasing approximately two to three bricks of heroin daily from an individual known to the government as "Supplier 1;"

b.     that for three to four months prior to his dealings with Supplier 1, he was fronted 30-40 grams of heroin every four to five days from an individual known to the government as "Supplier 2;"

c.     that for approximately five months prior to his dealings with Supplier 2, he purchased 20-30 bricks of heroin per week from an individual known to the government as "Supplier 3;"

d.     that he distributed heroin to specifically-identified individuals in and around the greater Roanoke area, in amounts ranging from to two bundles to five bricks per transaction;

e.     that he was fronted one to two ounces of crystal methamphetamine, also known as "ice," every four to five days from an individual known to the government as "Supplier 4," for a period of four months;

f.     that he had been purchasing approximately 3.5 grams to one-quarter of an ounce of crystal methamphetamine from an individual known to the government as "Supplier 5" every other day during a period of time in which Supplier 4 was incarcerated;

g.     that he purchased crystal methamphetamine from Suppliers 4 and 5 for distribution in and around the greater Roanoke area; and

h.     that he accepted firearms as payment for heroin and methamphetamine at times in lieu of cash.

5.     The total amount of heroin that RICHARDSON admitted to acquiring for distribution purposes was in excess of 1 kilogram, and the total amount of methamphetamine that he admitted to acquiring for distribution purposes was in excess of 500 grams.

6.     Multiple witnesses confirmed that they had purchased heroin or methamphetamine directly from RICHARDSON, or had been present when he sold such illegal substances to other individuals, as follows:

a.     One witness claimed that he/she had purchased heroin from RICHARDSON on 5-6 occasions, had seen RICHARDSON with three to four ounces of heroin at one time, and had ridden as a companion with another individual who regularly sold heroin supplied by RICHARDSON, at RICHARDSON's direction.

b.     Another witness stated that he/she purchased approximately one-half of a gram of methamphetamine from RICHARDSON daily for a period of four to five months. According to this witness, the transactions took place at local hotels or at an apartment, other than his own, that RICHARDSON partially subsidized so that he could use it as a front for distribution. The witness also stated that RICHARDSON routinely carried large quantities of cash and methamphetamine on his person.

c.  A third witness stated that he/she had purchased heroin from

RICHARDSON in bags stamped with the word "Bulletproof" on two or three occasions,

and had seen RICHARDSON with a large bag of crystal methamphetamine which

RICHARDSON offered to sell.

7.  RICHARDSON's distribution of heroin and methamphetamine, as described

herein, took place within the Western District of Virginia.

<div style="margin-left:50%">

Respectfully submitted,

JOHN P. FISHWICK, JR.
United States Attorney


*s/ Kari K. Munro*
Kari K. Munro
Special Assistant United States Attorney
VA Bar No. 65770
P.O. Box 1709
Roanoke, Virginia 24008-1709

</div>

SEEN AND AGREED:

Westley Richardson
Defendant

Robert Rider, Esq.
Counsel for Westley Richardson